## No. 11,495.

STATE EX REL. PHANOR BREAZEALE, DISTRICT ATTORNEY, VS. CLIFTON CANNON, SHERIFF AND EX OFFICIO TAX COLLECTOR, PARISH OF AVOYELLES.

Sheriffs are required to enter on the book provided for the purpose, all taxes and licenses with the interest thereon collected; the entries of the payment of the taxes and interest are to be contemporaneous with the dates of collection; from this book the Parish Treasurer is to transcribe in his book the taxes collected; the book is to be open at all times to public inspection, and the sheriff is also required to pay over to the Parish Treasurer in the first week of each month all collection of taxes and licenses; these provisions, designed to guard the public funds from loss by accident or defalcation, define functions of the highest importance to the public, and serious violation of such duties by the sheriff furnish the basis to remove him from office.  Act No. 85 of 1888, Secs. 76 and 86; Act No. 84 of 1892; Constitution, Arts. 196, 201.

That the sheriff finally pays over the taxes and licenses collected by him will not excuse the breaches of official duty, in not keeping his books as prescribed by law, in respect to his receipt of public funds, and in not making settlement at the periods designated by the statute; to hold that settlement at last is to be accepted as the equivalent of such public duties not performed, would be to make public funds dependent for their safety on the ability of the sheriff to settle finally, and would displace the statutory requirements of faithful accounts and prompt settlement, which, if observed, would effectually protect the public interests.

APPEAL from the Tenth District Court, Parish of Avoyelles. Coco, J.

*Phanor Breazeale,* District Attorney, for Plaintiff and Appellant; *Fenner, Henderson & Fenner* of Counsel.

*Thomas Overton, Joffrion & Joffrion* and *Clegg & Thorpe* for Defend-ant, Appellee.

————

The judgment of the District Court which was in favor of the de-fendant, was on first hearing in this court *affirmed*. A rehearing was applied for and granted. On the final hearing the opinion of the court was delivered by

MILLER, J. This case has been elaborately argued on the rehear-ing; is one of public interest as well as of great importance to the defendant. The opinion of this court has been reviewed with an earnest desire to reach a conclusion authorized by the testimony and consistent with the law and the articles of the Constitution bearing on the subject.

The proceeding is by the District Attorney of the parish of Avoyelles to remove the sheriff from office on grounds of mal-feasance, non-feasance and misconduct in office. Constitution, Arts. 196, 201. The defendant interposed exceptions to the frame of the petition, based also on the alleged absence of the requisites pre-scribed by the Constitution for maintaining the proceeding, and challenging the jurisdiction of this court to pronounce on the appeal the judgment of removal. All these objections have received due con-sideration and are fully discussed in the original opinion. We thought the petition made a case for submission to the jury, and that the ap-peal called for the decision of this court on the charges.* We ad-here to this view. Constitution, Arts. 196, 201.

The charges in part relate to the official books of defendant and import his failure to enter the taxes collected by him in the mode prescribed by law. The sheriffs of the country parishes are *ex officio* the tax collectors of the State as well as of the parishes. Constitu-tion, Art. 118. It is of paramount importance that these taxes shall

————

*Exception to the petition was, that it did not set out in the language of the Constitution that the suit was instituted by the District Attorney " on the written request and information of twenty-five citizens and tax-payers."

It was objected to the appeal that when a cause has been tried by a jury, and the jury has given a general verdict, the lower court must give judgment pursuant to the same unless a new trial has been granted. As in this case a general verdict had been found in favor of defendant, which was virtually an acquittal, the Dis-trict Court was powerless to render a judgment of conviction; that the Supreme Court could not render a judgment prohibited to the District Court; to set aside the verdict would be to render an *original* judgment of conviction. Citing Thompson vs. Chapman, 7 An. 258.—REPORTER.

280        SUPREME COURT OF LOUISIANA.

State ex rel. District Attorney vs. Sheriff and Tax Collector.

be promptly collected and faithfully paid over at stated periods. To effect this our legislation provides that books exhibiting the appropriate columns for entering State and parish taxes and licenses shall be kept by the sheriffs, in which they shall enter *at the dates of the collections* all taxes received. The Auditor of the State is to be furnished with a sworn statement of this book, to be compared with the accounts rendered of the tax collector. The Parish Treasurer is directed to transcribe into his duplicate book the entries in the sheriff's cash book, and to compare these entries with the sheriff's receipt book. The law further provides that this sheriff's cash book, with its entries contemporaneous with the payments of the taxes, is to be open at all times to the public inspection, so that all may see the daily tax collections, and so that any omission of collections may be detected. See Act No. 85 of 1888, Sec. 86, amended by Act No. 84 of 1892. With respect to licenses the law directs that a register shall be kept of those to whom the licenses issue and the dates of payment. Act. 150 of 1890, Sec. 22. The Auditor, required to furnish the cash book to the sheriffs, includes in the columns of the book one for the entry of licenses and interest paid. It is manifest that the failure of a sheriff to observe the directions of this legislation renders nugatory the checks and guarantees intended to secure the faithful collection and accounting for the taxes. The supervision of the Auditor to be provided with the sworn statement from the cash book, showing the entries of payments made at the dates when received, would be defeated if no such book is kept, or if the entries are not made or made irregularly. The check of transcribing the entries from the sheriff's book to that of the Parish Treasurer all entries of tax collections, is impaired or made utterly ineffective, if the sheriff does not enter the taxes on his book. The public inspection of the daily entries of the taxes paid to the sheriff is of no avail if the book does not make the exhibit required by law of the daily receipts of the taxes. Above all, this cash book to be kept by the sheriff is designed to secure accounting of the public funds in his hands. The improper retention or loss, as well as the opportunity for appropriating the public funds, are all intended to be guarded against by the explicit provisions of the statute, that every dollar of taxes that comes into the sheriff's hands shall with the interest be entered when received in the sheriff's cash book; transferred thence to the Parish Treasurer's book, and that this book of the Sheriff,

the primary and contemporaneous record of all his collections, shall be at all times exposed to the public view. Thus the system of accounting for all the public funds of the State and parishes, except Orleans, is based on the sheriff's record of the payments to him. If that record is not kept, the chief safeguard to ensure fidelity and punctuality in paying over the public funds is displaced. The appreciation of the necessity for the legislation under discussion is evidenced by the fact that provisions analagous to those under consideration occur in all our revenue statutes, and to make more stringent the requirement in this respect the act of 1888 was superseded by the more recent statute, which with great particularity imposes on the sheriffs this duty of making a daily record of their tax collections. Act No. 85 of 1888, Sec. 86; Act No. 84 of 1892. The plaintiff's petition imputes to the defendant the violation of this act of 1892. The penalty provided by that act is dismissal from office. The control of this court is not derived from the legislative act or the penalty the act provides. The legislative understanding of the gravity of the breach of official duty is denoted by the deprivation of office the act directs. But without such penalty provided by the law, it is the function of this court by the terms of the Constitution to remove from office sheriffs and others for official misconduct. That function we are called on in this case to exert. Constitution, Arts. 196, 201.

The relators have brought before us the sheriff's books purporting to show the tax and license collections. Our attention has been directed to the entry of the collection in October, November and December, 1892, of the taxes of 1891. The proper place for these entries was in the collection book of the taxes of 1891. Instead, the entries out of their natural order are found in the book of collections of the subsequent year, and in the back part of that book where no one would look for such entries. The law contemplates a continuous day to day record of the collections, not entries to one period in the cash book and then carried to another book to which reference is made and no attention would be directed. The irregularity of these entries is best illustrated by the consequence. In the unusual place near the end of a book, detached from the entries of the collections of the previous months of the year, these fall collections eluded observation. The Parish Treasurer charged with the scrutiny of the sheriff's cash book, and with transcribing the entries in it, naturally

·confining his attention to the appropriate place where such entries should appear along with and following the other collections of the taxes of 1891, had no knoweledge of these fall collections until ·brought to his notice by the District Attorney, and were ascertained ·by him in the researches that led to the institution of this suit. It is plain that these entries are in striking contrast with that daily ·and continuous contemporaneous record of the collection the law ·exacts. For the purposes of inspection the law proposes, it is well nigh the same as if there were no entries. We should hardly feel ·authorized to remove a public officer on the mere ground of failure ·to make particular entries, or even because they do not appear in ·their proper place. But the facts in connection with these entries ·are to be taken with the other evidence, and they all tend to the ·conclusion of the lax administration of the defendant's office. We have given attention to this explanation that these fall collections were not inserted in the book of 1891 taxes, in order to make room in that book for the entry of the taxes of 1892, which he designates current taxes. We are not impressed with the adequacy of the explanation, especially in view of the fact that the mode of entering the collections was followed by the delay of months in paying over the collections.

It is in proof that in December, 1892, the defendant collected from two railroad companies about one thousand nine hundred dollars of State and parish taxes of 1892. These collections were not entered except by an interlineation made in March, 1893. This large collection, like the taxes of 1891, escaped attention, with the attendant result of a deferred accounting, to be noted when we come to consider the method of settlement adopted by the defendant. We have considered in this connection the explanation in effect that these collections were overlooked in copying from the stub book into the cash book; that, discovered by defendant in checking off with the Parish Treasurer, they were then entered in the cash book and the amounts paid over with interest, and the further explanation is that defendant was then worried in mind by the trouble of his brother, and hence unfitted for attention to business. The testimony as to the discovery of the omissions shows some conflict; that offered by relator tends to show the omission was discovered by others not defendant and was then paid over, and in relator's brief is the suggestion, when would the omission have been corrected if not dis-

covered by others. The proof is that after the payment of these railroad taxes the defendant made three settlements with the Parish Treasurer. It emphasizes the lack of system in keeping his accounts that in none of these settlements of December 31, January 6, 10 and 16 was there any accounting for these railroad taxes, and the settlement of December 31 was the day after these large collections and the other settlements a few days later.  With all the benefit defendant can derive from his explanation, at least, it remains that if he had observed the law the primary entry of these collections would have been made promptly; not in his stub book, but in the cash book; the omission would not have occurred, nor would its discovery have depended on the examination two months after, whether by the officers of the jury or by the defendant, and least of all, would the paying over of taxes collected in December, 1892, have been delayed to the discovery at the later period.

'On this same branch of the case, the failure to keep the books re-quired by law, our attention is drawn to two payments of licenses claimed never to have been entered, one of two hundred and forty dollars and another of one hundred dollars, both for 1892.  The party who paid the two hundred and forty dollars for the license of 1892 is credited with a payment in May, 1893, with two hundred and twenty dollars and two dollars and twenty cents interest.  It is to be presumed the payment in 1893 was for the license of that year. There is no entry of the amount paid in 1892, either of the two hun-dred and forty dollars nor of the one hundred dollars. Another pay-ment proved to have been made defendant is one hundred dollars on account of a license.  This is conceded by defendant's explanation not to have been entered.  That explanation is payment being on account, defendant treats the amount as a deposit by the party. The answer of defendant as to the non-entry of the two amounts, two hundred and forty dollars and one hundred dollars, first dis-cussed, is they were included in his settlements. With the explanation, still there is incontestibly collections of public funds without entries added to the other testimony of defendant's disregard of duty.

There is still further proof of the defendant's neglect to keep his books in the mode directed by the very explicit and peremptory terms of the statute. The attention of the police jury seems to have been directed to defendant's accounts in 1892.  Then commenced the examination of his books and calls for settlements which led to

the institution of this suit.   In these examinations not only were disclosed the omissions already discussed, but others of a serious character.   Taxes and licenses bear interest, respectively, from 31st December and 1st March of the year they become due. This interest on the taxes is required by the statutes to be entered in the sheriff's books along with the principal.   See Act No. 85 of 1888, Sec. 3139; Act No. 84 of 1892; Act No. 150 of 1890, Secs. 22 and 23.   One fact brought to the attention of the jury in their investigations and distinctly proved is that an examination in March, 1893, showed that the large collections of taxes in the preceding month had not at that date been entered in the book.   The fact itself evinces that instead of full and accurate entries of collections contemporaneous with payments, the entries were made after, with all the hazards of forgetfulness, mistake and other causes of omission intended to be guarded against by the statutory requirement of contemporaneous registry. The absence of system and failure to observe plain legal exactions receives further illustration.   There is submitted to us the registry of licenses collected by defendant in 1893.   These license collections begin in the early part of the year.   In this registry we find that while interest is charged on some licenses, in other and numerous instances no interest whatever is charged.   This feature is made more significant from the fact that on the collections in the later months of the year 1893, on which interest was due since the first March, there are no entries for interest, while some of the earlier collections bear interest.   It is thus made conclusive to us that in this important particular, not only were there no contemporaneous charges of interest, but none whatever.   The same conclusion is forced on us with respect to the interest on the taxes collected from April to October, 1892.   These collections cover a large space in defendant's book, and with no entry of interest running on all these taxes from 31st December, 1891. .

There is yet another fact brought to our notice in connection with defendant's books. There is an entry under date of April, 1893, of the State and levee taxes of 1891 of the estate of Frith, one hundred and eighty-two dolllars principal and forty-six dollars of interest.   No such payment was made of that date and no interest was ever paid over to the State Treasurer.   The explanation from defendant of this is that he paid the taxes to the State before any interest became due with the understanding the tax-payer should refund the amount

with interest at two per cent. per month required by law on delinquent taxes. The State never received this interest. With the full benefit of the explanation it remains that the books intended to be a faithful record of all receipts of public money show a charge for interest never paid to the State because the defendant claims that, though figuring on his books as received, it was not due to the State. The transaction with all the other evidence in our opinion demonstrates the marked breach of official duty we have to deal with.

The explicit and peremptory direction of the law in respect to the books of his office, the defendant has treated as if the mandate was not on the statute book. We have the proof of large collections without any entries at the time; of entries not appearing in the proper place; of taxes and licenses collected with no interest whatever charged, and as the sequence of all this, there is the incontestible evidence of large amounts collected and not paid over until the omissions are discovered, although the defendant claims he perceived the omissions, and although it is in proof that he then paid over the amounts. In all aspects on this branch of the case the wisdom of the legislation requiring books to be kept by those who collect the public revenues, and that the books shall be an accurate record of all collections by entries contemporaneous with the collections, is forcibly illustrated by the utter disregard of his duty in this respect fixed on defendant by the proof in the record. Under the constitutional provisions which gave to the citizens the right to demand the removal of public officers for malfeasance and non-feasance in office, and which impose on the judiciary the duty enforcing that demand when made in the form prescribed by the constitution, this court has now to determine whether serious violations of official duty incontestibly established are to be deemed trivial and afford no basis for the remedy provided by the organic law for the protection of the State, the parishes and the citizens against abuses in office.

On the other branch of this case, the failure of defendant to make settlements of his collections of taxes and licenses, the proof shows defaults of the defendant more serious than those already discussed, if comparisons are to be admitted.

Obvious public policy forbids the retention of public funds by the officials charged with the collections beyond a reasonable time requisite to adjust the accounts and pay over the amounts. If such funds are permitted to be retained beyond such reasonable time,

surely no public advantage can result, and the pecuniary benefit of the official in whose hands are accumulated the funds of the State and parish, it will not be claimed is within the contemplation of the law. The loss of public revenues in the past, whether by accident or by defalcation, have arisen mainly from laxity in accounting by public officials. The holding on to public money indefinitely, instead of promptly paying it over, besides exposing the public funds to loss from accident, supplies the opportunity for the improper use of the funds, apt to result in their appropriation by the official, tempted to use funds in his hands not his own. The spirit of our legislation from an early period is altogether opposed to any withholding of public money by public officials for any period more than required to prepare the account and make payment to the treasury. Hence, the very explicit legislation that all tax collectors shall settle and pay over to the parish treasurer, in the first week of each month, all parish taxes and licenses collected and a final settlement shall be made in the month of July of every year. Act No. 85 of 1888, Sec. 76. The proof on this branch of the case brings to our notice that when the police jury were inducted, whose action led to these proceedings, the defendant had not conformed to the required settlement. From April to September, 1892, he made no settlements. The jury turned their attention to the subject and in September, 1892, the defendant paid nearly eight thousand dollars of the taxes of 1891. These taxes became exigible on the 31st December, 1891. It is quite manifest this large September payment embraced the accumulated collections of months previous. There are no settlements in May or June, or July or August or in the first week in September and July, fixed for final settlement, but passed away with no compliance. These taxes of 1891 are those in part entered without the charges for interest exacted by law, required to be collected and entered when collected. There is to be added to this the delayed payment of other taxes of 1891 entered in the back part of the tax collection book, beginning with taxes collected in 1893. These taxes, overlooked because of the unusual place where entered, received in the fall months of 1892, were not paid over till July, 1893, though tendered by defendant, as we appreciate the testimony, in March, 1893. But the tender itself makes prominent the default.

The instances of licenses collected and not paid over have been noticed in discussing the omitted entries. We gather from the

record that these licenses were included in the settlement ultimately obtained by the jury. We are not at liberty to infer, however, that as to the amount received on account of one of the licenses any payment was made. The references in the briefs on this point are not as distinct as could be wished, but we accept the testimony and statements in the briefs that the defendant discharged all liability to State and parish. With regard to the payment on account, we understand defendant's position to be he refused to receive it as part payment, the law prohibiting partial payments of licenses, but that he holds it as a deposit. The explanation virtually concedes that the party did business without a license, and the State or parish is not to be benefited by a part payment, which, though prohibited, defendant receives. These license collections, at least, concur in illustrating the failure of appreciation of the defendant of prompt settlements.

The retention of the railroad taxes by defendant, received and not entered in December, 1892, and not paid over till March, 1893, when the omission was fortunately discovered, has been discussed. With the explanation on this point already considered, there is the incontestible fact of the failure to account for a large amount of public funds at the period when payment should have been made, and the explanation itself points to the cause of defendant's remissness in his utter failure to observe the plain requirements of the law for the guidance of officials charged with collecting the public revenues.

We do not care to pursue further the examination of the charges against the defendant. The views presented are sufficient to dispose of the case. There is disclosed departures from official duty of the greatest character. It is due to the defendant to state that his accounts with the State were adjusted; no complaint comes from the State. So his accounts with the parish were finally closed, and we accept the testimony that he has fully settled with the parish. This excludes the imputation that would otherwise rest on him, but there remains the violations we have discussed of statutory provisions couched in the plainest language, demanded by the public interest, and these departures from official duty, in the performance of the judicial functions, can not be overlooked, least of all sanctioned. It would be more congenial to our feelings if we could view defendant's ultimate settlement as an extinguishment of the causes of complaint urged here. Were we to yield to our inclination, and so hold, it

would be to proclaim that rigid legal requirements of public officials are not binding, if fortunately the public interest, in the end happen to escape injury.

We have given all the attention it deserves to the fact urged in defence of the sheriff, that quarterly settlements had been the rule under a resolution of 1884 of the police jury. The legislative act of 1888 was the guide for the sheriff. That statute discarded the idea that the public taxes should remain in the sheriff's hands in aid of no public purpose, and against all considerations of public policy, for ninety days after the collections. The statute confronted him with its plain exaction of monthly settlements, and in the first week of the month. Nor can we appreciate that an official can invoke the ordinance, since nine months, in the case of his large payment in September, 1892, went by with neither monthly nor quarterly settlements.

The defendant held his office under the law and is bound by it. This court is vested with the function to enforce against public officials the requirements of the laws. The duty is unpleasant, but none the less imperative. To sustain the defences in this case would be in effect to announce that public officials may with impunity disregard their obligations, and that this court charged with the enforcement of the law may grant dispensations to such officials against the text and spirit of plain statutory enactments.

It is therefore ordered, adjudged and decreed that our former judgment be set aside, that the judgment of the lower court be avoided and annulled, and it is now adjudged and decreed that the defendant be and he is hereby removed from his office as sheriff of the parish of Avoyelles, and that defendant pay costs.

### DISSENTING OPINION.

WATKINS, J. The plaintiff prefaces his brief upon this application with this following statement, namely:

" We recognize and appreciate the conscientious labor which the court has expended in the evisceration of the *true facts* from the evidence presented in this complicated record.

" We should be slow to dissent from or question the correctness of any conclusion of law or fact reached by the court after such careful and painstaking investigation.

" In truth, we find that the court has decided all the questions of

law involved in favor of relator, except those bearing upon the germinal question of defendant's liability to removal from office.

"We further find that the court has substantially decided all the issues of fact presented in favor of relator, or in other words has held that all, or nearly all, the numerous charges of non-feasance and malfeasance set forth in the petition are fully proved."

I take this statement to mean that the plaintiff urges no objection to the facts as related in the opinion.

Basing its conclusion upon the state of the *whole* case, our original opinion declares that—

"It will thus appear that the case of the relator is that the defendant, as sheriff and *ex-officio* tax collector, has been guilty of a technical disregard of the rules and regulations specified in the tax statutes with reference to the collection of taxes, and that the respondent's failure to observe such regulations afforded opportunity for wrong-doing; not that respondent was guilty of any criminal act, or had failed ultimately to account for all the public moneys he had collected and received—for the fact is not denied that he had made all of his monthly, quarterly and even final settlements prior to the filing of this suit."

This proposition is not denied in plaintiff's application, but, on the contrary, it is affirmed to be true; and the insistence of plaintiff's counsel is, that for this "technical disregard of the rules and regulations specified" the defendant should be removed from office.

The argument of plaintiff's counsel on this application, orally and in writing, is chiefly confined to the seventeenth (17th) and nineteenth (19th) charges. Let us see what is the statement of our opinion with respect to them. It says:

"The seventeenth charge is as follows, viz.: It is shown that on December 26 and 30, 1892, or about said dates, (he) collected from the Texas & Pacific Railroad Company and the Southern Pacific Railroad Company some fifteen hundred dollars for State and parish taxes; that he failed to pay to the parish treasurer the amounts so collected until about March 23, 1893, although he pretended to make on January 18, 1893, February 10, 1893, and March 10, 1893, true and faithful settlements of all taxes and licenses collected by him during the respective months of December, 1892, and January and February, 1893." The substance of this charge is that the respondent collected the sums specified and thereafter failed and neglected

19*

to carry same into his accounts and settlements thereafter made, not that he had carried said money into his settlements and accounts, and thereafter failed to pay same over to the parish treasurer. The respondent's cash book does show that he had collected of the Texas & Pacific Railroad Company about one thousand dollars on December 26, 1892, and the proof shows that in a settlement subsequently made this sum was not included. But the respondent affirms that when the omission was discovered, while he and the parish treasurer were engaged in checking up his stub book, it was immediately entered in the cash book at date of payment, a supplemental statement filed and the money paid over at once, with interest added, etc. 15 So. Rep. 632.

" ' Nineteenth. It is shown that he has failed absolutely to keep his cash book furnished to him by the State Auditor, as prescribed and required by Act No. 84 of 1892, in the manner required by law, viz.: He has failed to make therein the entries of the payment of taxes and other moneys paid him by the tax-payers at the time of such payments. That on December 26 and 30, 1892, or about that time, the T. & P. R. R. Co. and the S. P. R. R. Co. paid the amount of taxes due by each, amounting to several hundred dollars, and they were not entered in the cash book at the time.' The sense of this charge is that the respondent has failed to keep his cash book in the manner prescribed by law, and not that he did not keep a cash book at all; in other words, that 'he failed to make therein the entries of the payment of taxes and other moneys paid him by the tax-payers at the time of such payments,' citing the instance of the two railroad companies. The statute relied upon by the relator requires that the auditor shall furnish the tax collector with a blank cash book, paged, ruled and divided into columns, in such form that the tax collector may enter therein the names of the persons making payments of taxes, dates of payments, amounts paid, on what account paid, etc. That law provides that 'the State taxes paid shall be first entered, and afterward a like entry of parish taxes shall be made.' 15 So. Rep. 633.

" ' The tax collector shall make such entry or entries at the time the tax-payer makes the payment of taxes.' The law then prescribes and defines the duties of the parish treasurer with regard to transcribing the entries of the tax collector from his duplicate cash book, and the kind of a certificate he shall append thereto. The final

clause of the statute contains the penalty that is affixed to any violation of its provisions on the part of the tax collector, and it is in these words, viz.: ' In case of the failure of the tax collector to keep said book as above prescribed, he shall be, on complaint, dismissed from office, and shall be liable to fine and imprisonment, at the discretion of the court.'    Act 84 of 1892.    What is the true intent and meaning of the phrase, ' In case of the failure of the tax collector to keep said book as above prescribed? '    Does it not mean just what it says—'keep said book as above prescribed?'    That is to say, the tax collector is required to keep the cash book in the manner indicated above; that is, according to the designations of the act from 1 to 8.    While it is true that the law requires the tax collector to make entries of the taxes paid ' at the time the tax-payer makes the payment,' yet it was not the intention of the Legislature to attach to any mere accidental omission of an amount of taxes paid, on the very date the payment was made, the severe penalties of the act. It could not have been the intention of the Legislature to declare that the omission to make an entry, however small, should subject the tax collector to dismissal from office, as well as to fine and imprisonment.    If such were indeed the case it would be scarcely possible for any tax collector to escape the consequences of the law.''    15 So. Rep. 633, 634.

Taking the two charges in connection, this further statement of the opinion follows, viz.:

'' But the proof is to the effect that the respondent paid in three hundred and fifteen dollars and twenty cents on March 10, 1893, and in April, 1893, tendered in full all the delinquent taxes collected from October, 1892, to April, 1893, but same were declined by the parish treasurer, pursuant to the instructions of the district attorney. But his receipt from the parish treasurer shows a full settlement made in July, 1893.    It also appears that all of these collections are properly entered in the respondent's cash book of 1893.    The respondent explains that it was his custom to make entries of *delinquent* taxes collected in the back part of his cash book in which he kept the entries of *current* taxes, leaving a sufficient space between them; and that this was done in order to prevent confusion in his accounts.    He explains that his stub book of receipts issued is an ample check on the entries made in the cash book, and that access to it can always be had for the purpose of the detection of errors or omissions therein.''    15 So. Rep. 635.

What are the conclusions that are to be drawn from the admissions of plaintiff's brief—the conclusion of the court on the whole case, and the disposition made by the opinion of the two charges that are insisted upon in the argument on this application?

Simplified, the *seventeenth* charge is that the respondent made collections of taxes from the railroad companies in the latter part of December, 1892, and failed to pay the same into the parish treasury until March, 1893, notwithstanding tax settlements were made with the parish between those dates; and the *nineteenth* is that he failed to make proper entries in his cash book of the aforesaid collections *"at the time of payment."*

But the facts are—as stated in the above quoted extracts from our opinion—that the amounts collected of the railroad companies were treated as *delinquent taxes of 1892, and, as such, entries thereof were made in the back portion of his cash book of 1893, according to his custom.*

That these amounts not having been carried into the settlements that were intermediately made, the attention of the respondent was attracted to the omission "while he and the parish treasurer were engaged in checking up (the respondent's) stub book."

That as soon as his attention was called to this omission, entries were made in the cash book as of dates of payment, a supplemental statement was prepared, a computation of the interest made and the principal and the interest turned over to the parish treasurer.

That subsequently the respondent tendered to the parish treasurer a full settlement of all *delinquent taxes* he had collected between October, 1892, and April, 1893, but the latter declined it in pursuance of the instructions of the district attorney, and in consequence of such declination the respondent failed to secure a final settlement of his accounts until July, 1893.

It is apparent that this failure to *promptly* pay over the amounts collected from the railroad companies was a *solitary, isolated* instance. That in all likelihood the failure to carry these amounts into the accounts of January and February, 1893, was occasioned by the fact that being *delinquent* taxes the entries of them in the back portion of the cash book were overlooked, and that on making a comparison between the stub book and cash book the oversight attracted the attention of the respondent and the parish treasurer and caused its immediate correction.

Resting our present decision upon the points indicated, can there be a doubt as to the accuracy of the statement of our opinion " that the case of the relator is, that the defendant, as sheriff and tax collector, has been guilty of a *technical disregard* of the rules and regulations specified in the tax statutes?"   We think not.

The theory of our opinion is that the tax statutes must be examined for the purpose of ascertaining what *duties* are imposed upon tax collectors, and, necessarily, such statutes must be consulted for the purpose of ascertaining what are the corresponding *penalties* to be inflicted for the violation thereof.

But, assuming that our opinion was in this respect erroneous, and that we can and must go outside of the statutes to find an interpretation of the *acts* and *conduct* of the respondent, what is the result?

The *acts* of the respondent were not criminal in character or wrong in themselves.  They do not evidence an improper use or disposition of the funds he had collected.  They do not disclose a customary and habitual delinquency, or default in making settlements.  They do not disclose any injury to have been suffered by either the State or parish by the delay in making settlements.

His conduct does not evince a *wilful disregard* of the law governing the duties of tax collectors, but an accidental omission in the *correct* and *timely* performance of them.  It attests a perfect willingness to make immediate correction of his errors as soon as his attention was attracted to them.   It shows that he kept his cash book so as to keep *delinquent* taxes separated from *current* taxes, and if this was not the legal and proper way same should have been kept the fault was one of *accident* and not of *intention* on the part of the respondent.

Taken all in all, is there discoverable in the acts or conduct of the respondent any evidence of either misfeasance or non-feasance outside and independent of penalties denounced in the tax statutes?

I can discover none.

In State *ex rel.* Whitaker vs. Adams, 46 An. 830, we had occasion to critically and carefully examine the articles of the Constitution governing removal proceedings, and in the course of our opinion we said:

" What were the object and purpose of this extraordinary grant of exceptional power to the judiciary?  In our opinion it was to furnish a guard and a protection against the unjustifiable continuance in

office of incompetent and unworthy officers, by giving to the people, acting directly in their own right, a special remedy to which they could themselves have free recourse, independently of the official action of others.  Without this article the people would have to rely entirely for relief upon the Governor, or General Assembly, or the municipal authorities, who, no matter how great the' occasion or cause for action might be, would be free to act or not as they thought necessary.''

And that such is the object and purpose of '' this extraordinary grant of exceptional power '' I now affirm; that is to say, it was intended as '' a protection against the unjustifiable continuance in office of incompetent and unworthy officers.''  But this record does not disclose either the *incompetency* or *unworthiness* of the respondent in the sense of our opinion in that case, or of the instant case; and hence there is no cause shown for his removal.

And we understand that the plaintiff's counsel is committed to this theory, because, in the course of their argument on this, the nineteenth charge, they state:  '' We do contend that if the evidence shows *flagrant violations of this provision* the defendant should be removed from office.''   15 So. Rep. 634.

The present opinion of the court neither purports to deal with any particular charge of the petition, nor does it proceed upon the lines of the application for rehearing.

It purports to deal, in a general way, with a variety of isolated facts, without reference to method or order, which have in my opinion as much pertinency to charges which were specifically abandoned at the argument as to those that were insisted upon in argument and decided by the court.

But aside from those details we have the following circumstances in respondent's favor, viz.:

1. That he was twice acquitted by juries of his parish of the same issues we have before us.

2. That there was an unanimous decision of this court in his favor in May of 1894, and ever since that time the case has been pending on this application.

3. Since the case was decided, the Legislature convened and adjourned, but during its session an act was passed directing the treasurer to refund to the respondent the sum of one hundred and seventeen dollars as having been '' erroneously paid to the State in the

settlement of licenses of 1892,'' (Act 184 of 1894) the discussion of which is the pivotal point in the present opinion of the court.

4. That at the time the original opinion herein was rendered a like judgment was rendered in favor of the respondent in State *ex rel.* O. D. Billon vs. A. L. Bourgeois (*ante* p. 184), sheriff of the parish of St. James, and there was a like application for a rehearing made therein which has been suspended until this time, an opinion in which has this day been handed down, refusing a rehearing and maintaining him in office.

In my opinion the reasoning and conclusions of the court in that case are conclusively in favor of respondent in this case. On the theory of our opinion in that case there is no *aggravation* for any of the charges against the respondent in this case. He has not been found guilty of fraud, or wrong-doing. He has not been shown guilty of the violation of a single provision of the revenue laws, wherein his duties are enumerated and defined, and wherein specific penalties are imposed for the violation thereof, and the violation of which is made the very foundation and groundwork of all the charges against him in plaintiff's petition.

He has been found guilty, and is to be removed from office without any precept of law—statutory or constitutional, criminal or civil, outside of the revenue law—being assigned as that in which the *duties violated* have been pointed out as justifying the judgment rendered against him.

For the reasons assigned in the *unanimous* opinion of the court in the *Bourgeois* case, as well as those assigned in the *original* opinion in this case (see 15 So. Rep., p. 626), I still adhere to that opinion as a correct exposition of the law and the facts of this case, and dissent from the present opinion of the court.